Argued and submitted March 6, remanded for reconsideration September 2, 2009

Katharine ENGLISH
and Barbara Pinkerton,
*Petitioners,*

*v.*

PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent.*

Public Employees Retirement Board
125766, 129958; A135928

216 P3d 342

Gregory Chaimov argued the cause for petitioners. With him on the briefs were Jeffrey F. Renshaw, Vaness A. Usui, Davis Wright Temaine LLP, Mark Johnson, and Johnson & Lechman-Su PC.

Keith L. Kutler argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Michael C. Livingston, Senior Assistant Attorney General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Petitioners seek review of a final order of the Public Employees Retirement Board (PERB) that denied their requests to change their retirement allowances and remove their designated beneficiaries. PERB denied petitioners' requests because ORS 238.305(6) provides that a retired member of the Public Employees Retirement System (PERS) may change his or her retirement allowances only in situations involving death or divorce. Upon retirement, petitioners had designated their same-sex domestic partners as their beneficiaries. Because Oregon law did not allow petitioners to marry their same-sex domestic partners, petitioners were unable to divorce their domestic partners when their relationships ended. Accordingly, PERB denied petitioners' requests to change their retirement allowances. On review for legal error, ORS 183.482(8)(a), we remand the final order for reconsideration.

We begin with a description of the statutory scheme to frame the issues before us. Upon retirement, a PERS member is entitled to receive a "service retirement allowance." ORS 238.300. Within 60 days of receiving the first benefit payment, a PERS member can elect to convert his or her "service retirement allowance" into a "service retirement annuity." ORS 238.305(1). A retired member may select from among six optional forms of service retirement annuities under ORS 238.305(1). The service retirement annuities at issue in this case are Option 1, Option 2A, and Option 3A, which are described in ORS 238.305(1).

Option 1 provides the PERS member the largest monthly benefit, but it is paid only for the lifetime of the member. Option 3A provides the PERS member a smaller monthly benefit; however, upon the member's death, a surviving beneficiary receives a monthly benefit equal to one-half of the member's monthly benefit for the duration of the beneficiary's life. Finally, Option 2A provides the PERS member an even smaller monthly benefit; however, upon the member's death, a surviving beneficiary receives a monthly benefit equal to the member's full monthly benefit. ORS 238.305(1).

A PERS member who, upon retirement, elects Options 2A or 3A may change that election in three circumstances. The first circumstance is described in ORS 238.305(5), which provides:

> "The designation of a beneficiary, the election of an option or any other election or designation under subsection (1), (2), (3), or (4) of this section may be changed by the member within 60 days after the date of the first benefit payment, except that the designation of a beneficiary under Option 4 may be changed by the member at any time before the member's death."

The second and third circumstances are described in ORS 238.305(6), which provides that a member who has elected options 2A or 3A may receive what is called a "pop-up" election either upon the beneficiary's death or upon divorce from the beneficiary:

> "If a retired member has elected to receive a service retirement allowance under Option 2A or Option 3A * * * and if the beneficiary under that option dies after the expiration of the time within which the member could change the election of an option or *if the beneficiary is the spouse of the member and the marriage relationship is terminated as provided by law* * * * the member may elect to receive, in lieu of the optional form of allowance previously elected, the allowance that the member would have received on the effective date of retirement under Option 1 * * *."

In other words, if, after the member elects Option 2A or 3A, the beneficiary dies or the member and beneficiary divorce, then the "pop-up" is triggered, allowing the retired member to elect the service retirement annuity under Option 1, thereby increasing the member's monthly benefit amount and removing the designated beneficiary.

Finally, ORS 238.305(10) provides that PERB may deny a "pop-up" election if "that denial is required to maintain" the Public Employees Retirement Fund's tax-qualified status:

> "The board may deny an election to convert a service retirement allowance under this section, a change of beneficiary under this section or a change in benefit options under this section if that denial is required to maintain the

status of the system and the Public Employees Retirement Fund as a qualified governmental retirement plan and trust under the Internal Revenue Code and under regulations adopted pursuant to the Internal Revenue Code."

With that background in mind, we turn to the facts of this case, which are undisputed. Petitioners, Pinkerton and English, are retired PERS members. Pinkerton retired in 1999, and she elected Option 3A, naming her long-time, same-sex domestic partner as her beneficiary. That relationship ended in 2005, and, in 2006, Pinkerton formally requested, under the "pop-up" election that PERS change her service retirement annuity from Option 3A to Option 1, a change that would have increased her monthly benefit amount and removed her beneficiary. Similarly, when English retired in 2002, she elected Option 2A and named her same-sex domestic partner of 23 years as her beneficiary. In 2005, after that relationship had ended, English requested under the "pop-up" election that PERS change her service retirement annuity from Option 2A to Option 1, which would have increased her monthly benefit amount and removed her beneficiary. The record establishes that both petitioners, before retirement, would have married their same-sex domestic partners had Oregon law allowed them to do so.

PERS denied petitioners' requests to change their service retirement annuity elections. In separate Letters of Determination, PERS explained that, because the beneficiaries were still alive and neither petitioner married nor divorced their designated beneficiary, the "pop-up" election was not triggered under ORS 238.305(6). Indeed, PERS concluded, in its letter sent to Pinkerton's attorney, that "the plain language of ORS 238.305(6) allows a 'pop-up' after entry of the judgment of divorce. Because Ms. Pinkerton was not married at retirement, she does not qualify for a pop-up as she had no spouse to divorce." Similarly, PERS concluded, in its letter sent to English, "you do not qualify to change to an Option 1 benefit as your named beneficiary was not your spouse and you were not married at the time of your retirement, as provided by Oregon law."

After PERS denied their requests to change their benefits, petitioners separately requested administrative

hearings, which were later consolidated. At the consolidated contested case hearing, petitioners and PERS filed cross-motions for summary determination. Petitioners argued that PERS, in violation of Article I, section 20, of the Oregon Constitution, denied them a benefit afforded to similarly situated individuals "based upon [petitioners'] inability to have married their domestic partners due to their sexual orientation." PERS responded that,

> "ORS 238.305(10) directs PERB to deny an election to convert a service retirement allowance * * * under ORS 238.305 'if that denial is required to maintain the status of the system and the [Public Employees Retirement Fund] as a qualified governmental retirement plan and trust under the Internal Revenue Code * * *.' Here, the plain language of ORS 238.305(6) does not authorize PERB to grant the pop-up to petitioners. If the Oregon Constitution were held to require petitioners to be entitled to the pop-up to the same extent that the pop-up is available to members who are married at the time of retirement, ORS 238.305(10) would require PERB to deny the pop-up to all. That is so because granting the pop-up to petitioners would jeopardize the qualification of the plan."

The ALJ, in a proposed order, concluded that ORS 238.305(6) was invalid under Article I, section 20:

> "Although ORS 238.305(6) is facially neutral in that it does not single out for disparate treatment homosexuals from among the class of unmarried PERS members, a facially neutral classification that has the unintended side effect of discriminating against homosexuals who cannot marry their domestic partners is prohibited under Article I, section 20."

Accordingly, the ALJ recommended that PERB grant petitioners' requests to change their retirement benefits to Option 1 and to delete their beneficiaries under Options 2A and 3A.

PERB declined to adopt the ALJ's proposed order. Instead, it concluded that it does "not have the legal authority to grant the relief" sought by petitioners:

> "ORS 238.305(10) requires the Board to maintain the tax qualified status of the Public Employees Retirement Fund (PERF). Granting the remedy sought by [petitioners]

is not consistent with federal law applicable to tax qualified retirement plans as the Board understands that law to be applied at this time.

"* * * * *

"Courts that find an unconstitutional denial of a privilege under [Article I, section 20,] could remedy the denial by ordering extension of the privilege to the plaintiff and other members of the burdened class of individuals or by ordering that the benefit be withdrawn from the privileged class. In *Hewitt v. State Accident Ins. Fund Corp.*, 294 Or 33, 53-54[, 653 P2d 970] (1982), for example, the court analyzed the remedy for a gender-based violation of Article I, section 20 * * *[.]

"* * * * *

"[Petitioners] assert that PERS must remedy the alleged Article I, section 20[,] violation by extending the pop-up to them. They do not ask PERS to remedy the alleged violation by denying the pop-up to married persons, although that remedy would equally address the alleged Article I, section 20[,] defect.

"In *Hewitt*, the court examined the purpose of the benefit as part of its evaluation of the appropriate remedy. Unlike the statutes in *Hewitt*, the Legislative Assembly already has defined the scope of PERS' authority to remedy an Article I, section 20[,] challenge to the denial of the pop-up. Because the scope of PERS authority excludes the remedy sought by [petitioners], [petitioners] cannot secure in this proceeding the relief that they seek regardless of the merits of their constitutional argument.

"* * * * *

"*Allowing [petitioners] to receive the pop-up to Option 1 in circumstances other than those provided by ORS 238.305(6) would result in an increase in annuity payments to [petitioners] that is not presently authorized by IRC Section 401(a)(9) as the PERS board understands it to be applied at this time. Were that to be the case, such an action would place the PERS plan's tax qualification at peril.* Consequently, even if Article I, section 20[,] were determined to compel PERS to equalize treatment of married and same-sex domestic partners, as [petitioners] contend that it does, ORS 238.305(10) would compel PERS to deny the pop-up to

[petitioners] and to instead stop granting it to married couples. As noted above, [petitioners] demand a remedy that *presents a substantial risk to the tax qualified status of the PERS plan and the PERF* in circumstances when an equally effective remedy that does not present any such risk also exists. The remedy claimed by [petitioners] is a choice that ORS 238.305(10) forbids. Because PERS could not grant the relief that [petitioners] demand under ORS 238.305(10), it is not necessary for PERS to consider or reach any determination on [petitioners] Article I, section 20[,] argument in this case.

"* * * * *

"PERS'[s] Motion for Summary Determination is GRANTED. The Motion for Summary Determination filed by [petitioners] is DENIED."

(Emphasis added.)

On review, petitioners argue that PERB misinterpreted and misapplied ORS 238.305(6) and ORS 308.305(10) to limit changes in retirement allowances to persons whom the law permits to marry. PERB responds that

"neither petitioner requested the change to Option 1 within 60 days of receiving her first benefit payment, [petitioners' designated beneficiaries] have not died, and neither petitioner has ever been married to the beneficiary whom she designated. Thus, ORS 238.305(6) requires that petitioner's requests to change their retirement allowance elections to Option 1 be denied."

Initially, we observe that the three circumstances identified above are alternative ways for retired PERS members to change their retirement benefits under ORS 238.305. Petitioners did not request a benefits change within 60 days under ORS 238.305(5). Thus, the only issue before us is whether PERB properly denied petitioners' attempt to exercise the pop-up election under ORS 238.305(6).

Petitioners do not assert that their elections qualify under the plain language of ORS 238.305(6). Rather, they contend that, because ORS 238.305(6) makes no provision for an election by members who have separated from their same-sex domestic partners, it is unconstitutional in that it "denies [them] rights equal to those of married persons." In support

of that proposition, petitioners rely on *Tanner v. OHSU*, 157 Or App 502, 971 P2d 435 (1998) (holding that it was a violation of Article I, section 20, to deny insurance benefits to same-sex domestic partners of university employees when university offered those benefits to spouses of married employees). PERB counters that, "[i]f ORS 238.305(6) [v]iolates Article I, [s]ection 20, as [p]etitioners [c]ontend, * * * then the [l]egislative [i]ntent [e]xpressed in ORS 238.305(10) [p]rohibit[s] PERB from [g]ranting [p]etitioners' [r]equests to [c]hange [t]heir [b]enefit [a]llowances to Option 1." (Boldface omitted.) In support of that proposition, PERB relies on the analysis in *Hewitt*, 294 Or at 50-54, and its holding that, when a statute violates Article I, section 20, the court determines the appropriate remedy—invalidation of the entire statute or extension of benefits to the class unconstitutionally excluded—by examining the legislative purpose underlying the statute and then determining what the legislature would have done had it been faced with the knowledge that the statute was constitutionally infirm.

In PERB's view, the legislative intent regarding a remedy in the event that ORS 238.305(6) is unconstitutional as applied to petitioners is clear from ORS 238.305(10): The legislature would have not intended to extend benefits to petitioners at the risk of losing PERS's tax-qualified status under the Internal Revenue Code. In its decision, PERB observed that the only remedy sought by petitioners was the extension of benefits to an unconstitutionally excluded class. Based on its interpretation of ORS 238.305(10), PERB concluded that the benefits under ORS 238.305(6) could not be extended to petitioners because "[t]he remedy claimed by [petitioners] is a choice that ORS 238.305(10) forbids." ORS 238.305(10) provides that "[t]he board may deny an election * * * if that denial *is required* to maintain the status of the system and the Public Employees Retirement Fund as a qualified governmental retirement plan and trust under the Internal Revenue Code * * *." (Emphasis added.)

ORS 238.305(10) confers discretionary authority on PERB to deny an election if the denial is "required" to maintain the tax-qualified status of PERS. Under the language in the statute, the predicate to PERB's proper exercise of its discretionary authority under the statute is the requirement

that it make a finding that denial of an election is required to protect PERS's tax-qualified status. The word "require," as commonly understood in the context in which it is used in the statute, means "to ask for authoritatively or imperatively : claim by right and authority : insist upon usu. with certainty or urgency : DEMAND, EXACT[.]" *Webster's Third New Int'l Dictionary* 1929 (unabridged ed 2002). In other words, the statute imposes a requirement on PERB that it make a determination regarding whether the election would cause a loss of tax-qualified status. However, in its opinion, PERB does not make that determination; rather, it is equivocal in that respect. At one place in its opinion, PERB appears to approach the required determination by asserting that allowing petitioners to exercise the "pop-up" option is "not presently authorized by IRC Section 401(a)(9) as the PERS Board understands it to be applied at this time." Ultimately, PERB concludes that "such an action would place PERS plan's tax qualification at peril" and that petitioners "demand a remedy that presents a substantial risk to the tax qualified status of the PERS plan[.]" Those findings are qualitatively different from a finding that the denial of petitioners' elections is required to maintain PERS's tax-qualified status.

PERB's failure to find that PERS will lose its tax-qualified status if it permits petitioners' elections renders its reasoning legally defective. That failure to make the finding required by ORS 238.305(10) before exercising discretion under the statute is not a matter of mere semantics. Under PERB's reasoning, petitioners are denied a remedy that may otherwise be available to them—benefits that result from their exercise of the option under ORS 238.305(6). Under *Hewitt*, the availability of the remedy sought by petitioners before PERB depends on whether the legislature would have intended that remedy in the event that it had contemplated the unconstitutionality of the application of ORS 238.305(6). If PERB relies on the language of ORS 238.305(10) as an indicator of legislative intent in that regard and elects to exercise its discretionary authority under the statute to deny benefits to petitioners because of the purported lack of a legislatively—intended remedy, then PERB must exercise that discretion within the boundaries imposed by the legislature in its grant of authority in ORS 238.305(10). Otherwise,

PERB's exercise of discretion does not reflect the legislature's intent as required by *Hewitt*.

Accordingly, this matter must be remanded to PERB for reconsideration. On remand, if PERB continues to assume that ORS 238.305(6) is unconstitutional as applied to petitioners, then it must determine whether the requirements of ORS 238.305(10) are satisfied before it can exercise the discretion conferred on it by the legislature and conclude that petitioners are not entitled to the remedy they seek.

Remanded for reconsideration.