Argued and submitted July 11, 1984, reassigned March 26, Court of Appeals
affirmed on different grounds, conviction affirmed June 18, reconsideration
denied July 30, 1985

# CITY OF SALEM,
*Respondent on Review,*

*v.*

# BRUNER,
*Petitioner on Review.*

## (TC 139,465; CA A28085; SC S30627)

702 P2d 70

Dale L. Crandall, Salem, argued the cause and filed the brief for petitioner on review.

Paul Lee, Salem, argued the cause and filed the brief for respondent on review.

Dave Frohnmayer, Attorney General, James E. Mountain,

Jr., Solicitor General, Virginia L. Linder, Assistant Solicitor General, and Stephen F. Peifer, Assistant Attorney General, Salem, filed an *amicus curiae* brief for the State of Oregon.

Gail Meyer Baron, Portland, filed an *amicus curiae* brief for the Oregon Criminal Defense Lawyers Association.

ROBERTS, J.

Campbell, J., concurred and filed and opinion.

## ROBERTS, J.

Defendant seeks review of the Court of Appeals dismissal of his appeal to that court. The Court of Appeals dismissed for lack of jurisdiction, citing ORS 221.360, set forth in note 3. Defendant petitioned for review to this court, raising the claim that his inability to appeal to the Court of Appeals, except on the constitutionality of the city charter or ordinance, denied him equal privileges and immunities under Article 1, section 20, of the Oregon Constitution.

## THE FACTS

Defendant was arrested for driving under the influence of intoxicants by a City of Salem police officer. He was charged with a violation of the Salem Revised Code Section 100.330(a)(2) and cited into Salem Municipal Court.

The citation stated that the offense occurred in Polk County but the arrest was made after the officer followed defendant across the bridge into downtown Salem, located in Marion County. Although the major part of Salem is situated in Marion County, a part of Salem is situated on the west side of the Willamette River in Polk County.

Prior to trial in municipal court, defendant moved to have the litigation transferred to Polk County District Court. The motion was denied.[1] Defendant waived jury trial and filed a motion to suppress evidence. That motion also was denied. Trial was had on stipulated facts and defendant was found guilty. Defendant then appealed to Marion County Circuit Court and had a trial *de novo*. Defendant repeated his motion to suppress evidence, and the motion again was denied. He again waived a jury trial and again was found guilty.

Defendant then appealed to the Court of Appeals on evidentiary grounds, asserting that his motion to suppress should have been allowed. The City of Salem moved for dismissal based on ORS 221.360 and *City of Klamath Falls v. Winters,* 289 Or 757, 619 P2d 217 (1980), which upheld the dual appellate scheme provided in ORS 221.360. The Court of Appeals allowed the motion for dismissal.

---

[1] Defendant has not assigned error to this ruling.

# THE STATUTES

■■    In the City of Salem, a state, county or city police officer having probable cause to believe a person has committed a major traffic offense may cite the alleged offender for a violation of state statute or of the city ordinance which incorporates these state laws. *See* Salem Revised Code 100.330.[2] The officer also has the choice to cite the person into municipal court or district court. A person cited to district court for violations of either a city ordinance or a state law may appeal to the Court of Appeals on any legal issue. ORS 46.250. Likewise, a person cited to municipal court for violating a state statute may seek removal from municipal court to the district court, ORS 484.030(2), 153.565, 51.050(2), *Henderson v. Smith*, 282 Or 109, 577 P2d 504 (1978), and from there appeal to the Court of Appeals on any legal issue. In contrast, a person cited to the municipal court for a city ordinance violation can seek *de novo* review to the circuit court, ORS 221.350, 221.390, and appeal to the Court of Appeals only on the constitutionality of an ordinance or charter provision, ORS 221.360.[3]

---

[2]

"100.330. ADOPTION OF STATE MAJOR TRAFFIC OFFENSES. (a) The following enumerated sections, being sections of Oregon Revised Statutes, hereby are adopted by reference and made a part of this chapter.

"(1)  487.550
"(2)  487.540
"(3)  483.602(1), (2) and (4) (b)
"(4)  483.604
"(5)  487.560
"(6)  487.555

"(b) All acts which are made unlawful by the above mentioned sections of Oregon Revised Statutes shall be considered as offenses against the city when committed within its boundaries and the penalty for such offenses shall be as provided in ORS 161.615(1) and 161.635(1)(a). (Ord No. 86-82).

ORS 487.540 is the state statute defining driving under the influence of intoxicants. Therefore the charge against defendant was a violation of Section 100.330(a)(2).

ORS 221.330 allows cities to adopt as ordinances state statutes.

"* * * Cities may adopt as ordinances any statute of the State of Oregon, the subject matter of which is within the scope of the charter authority by reference to the chapter or section, without further publication or posting thereof."

[3] ORS 221.350 provides:

"Whenever any person is convicted in the municipal court of any city of any offense defined and made punishable by any city charter or ordinance, unless the charter of the city prohibits appeals from such court, such person shall have the

This statute, in part, provides: "Where the right of appeal in such cases depends upon there being involved an issue as to the constitutionality of the charter provision or ordinance, the decision of the appellate court shall be upon such constitutional issue only." In *City of Salem v. Polanski*, 202 Or 504, 509-10, 276 P2d 407 (1954), we interpreted this statute to disallow appeals beyond the circuit court except as expressly provided in the statute. We held that only cases involving the constitutional issues specified came within the jurisdiction of the Court of Appeals. In *City of Klamath Falls v. Winters, supra*, we declined to read ORS 221.350 and 221.360 as grants of appellate jurisdiction; rather, we held that they were restrictions on that jurisdiction. The effect of these statutes as interpreted is to preclude the right to plenary appeal in cases such as the present.

## THE CONSTITUTIONAL CLAIM

Defendant contends that these statutes, by restricting him to a limited rather than a full appeal, violate the equal privileges and immunities clause of Article I, section 20, of the Oregon Constitution.[4] The essence of defendant's claim is that he was denied a privilege available to similarly situated defendants because a person cited for the same conduct to municipal court under a state statute or to a district court

same right of appeal to the circuit court within whose jurisdiction the city has its legal situs and maintains its seat of city government as now obtains from a conviction from courts of justice of the peace. The appeal shall be taken and perfected in the manner provided by law for taking appeals from justice courts."

ORS 221.360 provides:

"In all cases involving the constitutionality of the charter provision or ordinance under which the conviction was obtained as indicated in ORS 221.350, such person shall have the right of appeal to the circuit court in the manner provided in ORS 221.350, regardless of any charter provision or ordinance prohibiting appeals from the municipal court because of the amount of the penalty or otherwise. An appeal may likewise be taken in such cases from the judgment or final order of the circuit court to the Court of Appeals in the same manner as other appeals are taken from the circuit court to the Court of Appeals in other criminal cases. Where the right of appeal in such cases depends upon there being involved an issue as to the constitutionality of the charter provision or ordinance, the decision of the appellate court shall be upon such constitutional issue only."

[4] Article I, section 20, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

under either a city ordinance or state statute would ultimately be able to appeal to the Court of Appeals on any legal issue while defendant, who was cited for a city ordinance violation to a municipal court, could only appeal to the Court of Appeals on the constitutionality of the underlying city ordinance or charter provision. The fault defendant finds with the dual appeal procedures lies in the "unbridled discretion" of police officers to determine the appeal route by checking one of two boxes on the uniform citation form charging a violation of city ordinance or state statute and by filling in a blank fixing the court in which the original trial is to be held. The box checked and the court designated set the scope and availability of appeal.

Defendant argues that *State v. Freeland,* 295 Or 367, 667 P2d 509 (1983), requires that the citing officer's discretion must rest on meaningful criteria consistently applied to similarly situated defendants. Defendant is correct.

The state as amicus defends the dual appellate scheme on three grounds. It first argues that there is no disparity in appellate opportunities because municipal court defendants may seek habeas corpus review, a form of review which the state contends is "comparable to, if not substantially the same as, the appellate rights of a district court defendant." Second, the state asserts that plenary appellate review confers no particular "privilege" on defendants. If no "privilege" is identified then no "privilege" is denied and Article I, section 20, is inapplicable. Third, the state contends that defendant has failed to prove that discretion was exercised in a standardless manner. The state asserts that each law enforcement agency may have standards upon which to make citing decisions. In any case, defendant has not demonstrated the contrary.

We disagree with the state's first suggestion that habeas corpus review is comparable to direct appellate review. Although a defendant may raise a full array of legal issues by habeas corpus, the writ is only available to a defendant who is "imprisoned or otherwise restrained of his liberty," ORS 34.310. We have interpreted this language to require some "physical restraint within the state of Oregon and within some county or judicial district of the state." *White v. Gladden,* 209 Or 53, 60, 303 P2d 226 (1956). In that case we held

that habeas corpus was not available to a defendant on parole. It would likewise appear that habeas corpus relief was not available to those who are convicted and fined. Because of its limited availability, it is not an adequate substitute for direct appellate review.

■ The state's second and third points deserve further discussion. In *City of Klamath Falls v. Winters, supra,* a majority of this court rejected challenges to the instant statutory scheme under the federal and state constitutional guarantees of equal treatment. We examined only the classifications drawn by the statutes in relation to the purported purpose for the two appellate routes and found a "rational basis" for the system. *Winters* did not consider the Article I, section 20, guarantee of equality of privileges of each individual "citizen" separate from the application of this guarantee to any "class of citizens." We later discussed this aspect of Article I, section 20, in *State v. Clark,* 291 Or 231, 630 P2d 810 (1981), *State v. Edmonson,* 291 Or 251, 630 P2d 822 (1981), and *State v. Freeland, supra.*

In particular, *Winters* stated:

"[I]f we were to hold ORS 221.360 to be invalid upon the ground that a defendant convicted in municipal court and circuit court is denied equal protection because he does not have the same right to appeal to the Court of Appeals as granted to a defendant convicted in a district court, a person convicted in a district court could equally contend that he is denied equal protection in that he does not have the same right to review by a trial *de novo* in circuit court as granted to a defendant convicted in municipal court. Yet, both defendants whose cases originate in municipal court and defendants whose cases originate in district court enjoy advantages on appeal that are not available to the other.

"For these reasons, it may well be that the differences between the procedures available to a defendant convicted in a municipal court, as compared with those available to a defendant convicted in a district court, do not rise to such a level of 'inequality' as to constitute 'unequal' protection of the laws." 289 Or at 771.

But, of course, the fact that two processes exist by which one person may enjoy advantages not available to another is precisely what triggers the Article I, section 20, concerns we addressed in *Freeland.* Whenever a person is denied some

advantage to which he or she would be entitled but for a choice made by a government authority, Article I, section 20, requires that the government decision to offer or deny the advantage be made "by permissible criteria and consistently applied." *State v. Freeland, supra,* 295 Or at 377. Far from answering the question with which we are here confronted, *Winters* only posed it before shifting the focus to a consideration whether there existed some reason, that is, "rational basis," for two appellate routes.

Both the City of Salem and the state argue that plenary appeal of legal issues does not offer a substantial enough advantage to be a "privilege." There are distinct advantages which attend Court of Appeals review. Consideration by a multi-judge body and uniformity of trial court decisions are among them. However, the point is not how many advantages can be catalogued with one procedure as compared with another. Even if we assume that the two procedural channels are, on the average, roughly equivalent as to whole "classes" of defendants, they obviously are not equivalent as to any one defendant. Article I, section 20, mandates equality of treatment for any "class of citizens" as well as for any "citizen."

A second trial of a purely factual issue, for instance, the speed at which defendant was driving or whether he was driving under the influence of intoxicants, may be advantageous to a defendant who denies those facts. A further appeal to the Court of Appeals would be of no value unless defendant can raise some genuine issue of law. On the other hand, if the facts are undisputed, but defendant challenges the interpretation of a city ordinance or some other legal premise of the prosecution, he is not afforded "privileges, or immunities * * * upon the same terms" with all citizens when he cannot appeal that issue beyond the circuit court as a citizen tried in district court may do. Indeed, where a circuit court has more than one department or judge, it is quite possible that defendants would receive contrary legal rulings on the same issue without a chance for appellate resolution of the conflict.

Moreover, a "privilege" for purposes of Article I, section 20, has the same meaning whether it arises in the context of a challenge to invidious class discrimination, as in *Hewitt v. SAIF,* 294 Or 33, 653 P2d 970 (1982), or to the

standardless grant or denial of priveleges to individual citizens as in *State v. Freeland, supra.*

The two appellate routes present a choice of "privileges" which must be made by defensible criteria, that is, by criteria which ensure consistency in treatment. The question is whether there are in this case "terms" upon which the two systems were administered "equally" to "any citizen."

Amicus Oregon Criminal Defense Lawyers Association asserts that the statutes can never be administered in a way that comports with Article I, section 20. The Association argues that the criteria upon which the citing decision is made must relate to the function of appellate review itself. In other words, they argue that the decision setting which appellate route defendant has available, either *de novo* review to the circuit court with limited further appeal or plenary appeal of legal issues to the Court of Appeals, must be based on some consideration whether defendant will appeal primarily factual or legal issues. Amicus contends that no criteria can be fashioned at the initiation of a criminal case which will anticipate issues on appeal. Therefore, according to amicus, the statute are not, and cannot be, "capable of valid administration," because the "terms" on which one or the other appeal route is chosen are not defensible under the constitutional guarantees of equal treatment. *State v. Edmonson, supra.*

In *State v. Freeland, supra,* this court assumed that the two methods of determining probable cause to prosecute, that is, information and preliminary hearing on the one hand and grand jury indictment on the other, were "capable of valid administration." Because both procedures are specified in the constitution, the validity of their co-existence could not be challenged. However, the "terms" or criteria for choosing when one or the other would be used were required to be "defensible," that is, based upon standards which assure consistency among similar cases.

■ The instant case involves a scheme of alternative appeal procedures created by statutes, not by constitution. Amicus raises the threshhold question whether this choice of statutory procedures is "capable of valid administration." We reject amicus's claim that Article I, section 20, requires that the criteria upon which the citing decision is made must

reflect the most effective appellate route for defendants. Whether these statutes are otherwise capable of valid administration is not before us. It is premature to confront this issue on the state of this record.

In both *State v. Clark* and *State v. Edmonson* we suggested that the defendant must show how the choice of procedure was administered and that the choice was a purely haphazard one. For purposes of the instant statutory scheme, a defendant who claims that his or her appeal rights are unconstitutionally limited under ORS 221.360 must raise that issue in the trial court *before* the first trial and must develop the necessary factual record at the earliest possible time.

There is nothing in this record that reveals whether a citing policy exists and whether the citing officer acted in accordance with any criteria established by the officer's law enforcement agency. For the same reasons as in *Clark* and *Edmonson,* we therefore affirm the Court of Appeals on different grounds.

The Court of Appeals is affirmed on different grounds. The judgment of conviction is affirmed.

**CAMPBELL, J.,** concurring.

I concur in the result reached in the court's opinion and will state an alternative analysis on which I think the decision should be based.

At the crux of the majority opinion is the reliance on petitioner's argument outlined in his brief that the police officer had "unbridled discretion" to determine the appeal route by checking one of two boxes on the uniform citation form indicating a violation of either a city ordinance or a state statute and designating the court in which the original trial would be held. However, at oral argument, petitioner abandoned this argument and conceded that the city police officer did not have unbridled discretion.

> "I want to attempt to narrow the issues here a little bit so that we can focus on what the real issue is. I'll concede of course that consistent policy can prevent the haphazard administration of the city ordinance; I'll even concede that the City of Salem may have such a policy in this case. The reason, however, that the scheme of the ordinances and the statutes is a violation of Article I Section 20 in this case — is

that the City of Salem's policy did not cover and could not cover all citizens similarly situated. And this is the major distinction that takes it out of the similarity of reasoning that has gone on with *Clark* and *Edmonson* and *Freeland.* In those cases, the issue was whether a consistently applied policy of administration could create, even though there were two alternative routes of procedure, to create terms by which there would be an appropriate application of the State's procedural rules to a similarly situated person."

The focus of his argument thus shifted from "unbridled discretion" on the part of the officer to the fact that there were three overlapping jurisdictions—city police, county sheriff and state police—each of which could have a different, but consistent within each organization, citing policy. At oral argument, petitioner continued:

"* * * It is a statutory scheme in relation to the ordinances and the statutes and the overlapping jurisdictions of the courts and of the statutes * * *. It is not so much a matter of undefined discretion as it is a matter of a person in a certain particular set of circumstances at a certain place and time being subject potentially to alternative courses of appeals merely because of which officer that happens to arrive at the scene. * * *."

The bottom line of his argument is as follows:

"I think that the defendant ought to be afforded the same opportunity to remove [from municipal court] and make his own election initially, to get himself to a court of record."

For the following reasons, it is my opinion that the defendant has the right he prayed for but that he did not elect to fully pursue that right.

In *State v. Freeland,* 295 Or 367, 369, 665 P2d 509 (1983), we said that "[a] claim of impermissibly unequal use of authority, like other claims of illegality, must be tested first against the legal source of the authority and second against the state constitution * * *." The source of authority for the Municipal Judge of Salem comes from Salem's City Charter. The pertinent part of Section 8 of the City Charter entitled "Recorder, Municipal Court and Judge", reads as follows:

"The municipal judge shall be the judge of the municipal court of the City of Salem, which is hereby established, and shall have jurisdiction over all violations of city ordinances, and may hold to bail, fine or commit persons found guilty

thereof, and *shall have jurisdiction and power like a justice of the peace within the limits of said city and the laws governing justices of the peace shall apply* as far as applicable to all his proceedings." (Emphasis added.)

Thus, the procedural rules governing justices of the peace would apply to the Salem Municipal Court because the city charter incorporated them into the municipal court system. *See Ah Poo v. Stevenson,* 83 Or 340, 345, 163 P 822 (1917). (Portland City Charter provision incorporated general laws of the state applicable to Justice Courts and this court looked to the general state laws to ascertain the procedure to be followed.) ORS 221.710 directs the court of the state to take judicial notice of city charters which have been duly certified and filed with the Librarian of the Supreme Court and reads in pertinent part as follows:

"(1)    All incorporated cities shall file with the Librarian of the Supreme Court Library a duly certified copy of the charter and all amendments thereto of the city. * * *. *When so filed all courts of the state shall take judicial notice thereof and the same may be referred to and pleaded as a public statute of the state.* Future amendments shall be filed in like manner and with like effect." (Emphasis added.)

The Salem City Charter has been properly filed with the librarian of the Supreme Court.

We must therefore look at the power and jurisdiction of the justice court. ORS 51.050(2) provides:

"(2)    Any defendant charged with a misdemeanor in a justice court after entering a plea of not guilty, shall be immediately notified of his right to have the matter transferred to the district court for the county where the justice court is located, or if there is no district court in the county, then to the circuit court for the county where the justice court is located. The election shall be made within 10 days after the plea of not guilty is entered and the justice shall immediately transfer the case to the appropriate court."

The power of the justice court, and therefore the Salem Municipal Court, is limited.

Salem's charter states that the power and jurisdiction of the city court shall be the same as the justice courts. Therefore, the city judge does not have the power to refuse a

transfer nor does the judge retain any jurisdiction once transfer is requested. ORS 46.040 gives district courts "concurrent jurisdiction with municipal courts of all violations of the charter and ordinances of any city wholly or in part within their respective counties, committed or triable within their respective counties." If a defendant charged with a misdemeanor wants to remove the case to district court, the justice court, or in this case the Salem Municipal Court, does not have the power to retain jurisdiction but must allow removal and the district court has jurisdiction to hear the case.

The definitions pertinent to the meaning of misdemeanor are contained in ORS 161.505, 161.515 and 161.545. ORS 161.505 defines offense as follows:

"An offense is conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state *or by any law or ordinance of a political subdivision of this state.* An offense is either a crime or a violation or an infraction." (Emphasis added.)

ORS 161.515 defines crime as:

"(1)    A crime is an offense for which a sentence of imprisonment is authorized.

"(2)    A crime is either a felony or a misdemeanor."

ORS 161.545 defines misdemeanor as:

"A crime is a misdemeanor if it is so designated in any statute of this state or if a person convicted thereof may be sentenced to a maximum term of imprisonment of not more than one year."

When the City of Salem adopted the state's major traffic offenses, it also adopted the penalties provided for by state statute. *See* footnote 1, *supra.* A conviction under Salem Revised Code, section 100.330(2) allows for a jail sentence of up to one year and a fine of up to $2,500. Thus under Oregon Statutes, conviction of a violation of Salem Revised Code, section 100.330(2) would be a conviction of a misdemeanor.

In *Henderson v. Smith,* 282 Or 109, 557 P2d 504 (1978), this court determined that when a municipal court tries a state offense, the municipal judge is exercising authority as a justice court, citing ORS 484.010(2) and ORS 484.030(2) (renumbered 153.55(2)). We proceeded to interpret ORS 51.050(2) as follows:

"We hold that a person charged in a municipal court with a state traffic offense has a right to be notified of his option to remove the case to district court; that the municipal judge had no discretion in this regard; and that mandamus is appropriate to enforce this right."

In that decision, the court stated that it need not decide the issue based on whether the city charter provisions allowed removal because state statutes 484.010(2) and former ORS 484.030(2) (renumbered 153.55(2)) controlled. In this case, the state statutes are not applicable because defendant was charged with violation of a city ordinance and not a state statute. Therefore, Salem's City Charter, which incorporates the power and jurisdiction of the justice courts, governs and allows the defendant removal of misdemeanor cases to district court if he so chooses. The remedy when the Municipal Judge refused to allow removal was mandamus. Removal would not be to Polk County District Court but to Marion County District Court.[1] The defendant therefore had the right that he prayed for, the right of removal with the corresponding right to appeal on any legal issue to the Court of Appeals. Under either of his theories raised as constitutional arguments, he had the relief he sought. He chose not to attack the validity of the Municipal Court Judge's refusal to allow removal, but rather waited to attack ORS 221.360 on constitutional grounds. By failing to pursue his rights to remove, defendant in essence has made an election. He has foreclosed Court of Appeals review by his own conduct.

This court has held that constitutional issues should not be reached when there is an adequate statutory basis for making a decision. *Webb v. Highway Division,* 293 Or 645, 648, 562 P2d 783 (1982); *Douglas County v. Briggs,* 286 Or 151,156, 593 P2d 1115 (1979). Petitioner did not raise the constitutional issue until he appealed to the Court of Appeals. Had

---

[1]ORS 51.050(2) allows for transfer "to the district court for the county where the justice court is located." ORS 221.720 defines legal situs of the city and therefore which district court would have jurisdiction.

"(1) For the purpose of the administration of all laws relating to incorporated cities, other than ORS 221.090, every city shall be deemed to have its legal situs in the county in which the seat of the city government is situated.

"(2) Notwithstanding any other provision of law the jurisdiction and application of government of cities shall be coextensive with the exterior boundaries of such cities, regardless of county lines.

petitioner asserted his rights under the city charter and state statutes, he would have obtained the relief he wanted. It was not an action by the state which precluded Court of Appeals review of defendant's case but defendant's own conduct. His failure to pursue removal from municipal court to district court operated as an election and confined his appeal to a trial *de novo* in the circuit court. Under the facts in this case there is no constitutional issue.