Argued and submitted February 6, the decision of the Court of Appeals and the
judgment of the circuit court affirmed March 20, reconsideration denied April 24, 1990

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## DANIEL EDWARD BUCHHOLZ,
*Petitioner on Review.*

(TC 10-87-00725; CA A45808; SC S36317)

788 P2d 998

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause on behalf of the petitioner on review. With her on the petition was Gary D. Babcock, Public Defender, Salem.

Brenda J Peterson, Assistant Attorney General, Salem, argued the cause on behalf of the respondent on review.

GILLETTE, J.

## GILLETTE, J.

The issue in this murder case is whether the trial court should have ordered the district attorney to offer defendant the same plea bargain offered to his codefendant.[1] The Court of Appeals held that the trial court properly refused to issue such an order. *State v. Buchholz,* 97 Or App 221, 775 P2d 896 (1989). We affirm.

## FACTS

Defendant, Daniel Edward Buchholz, and his friend, Russell Cooper, killed 91-year-old George Small while committing a robbery. Defendant and the victim were acquaintances. Cooper and the victim met for the first time the day before the incident.

Defendant and Cooper spent the week before Small's death together, visiting friends and smoking marijuana. On October 29, 1986, the day before the crime, defendant and Cooper visited Small and obtained used pop bottles and cans which they exchanged for money at a nearby market. They spent this money on gasoline while they continued to use marijuana.

The two men returned to Small's house the next day and witnessed Small paying for the installation of a new water purifier. Small handed $300 to the purifier installer and returned the rest of his money to his wallet. At this point defendant spoke to Cooper and persuaded him that they should rob Small. The plan called for Cooper to hit Small in the back of the head with Small's cane while defendant distracted him. Sometime after 12:30 p.m., defendant and Cooper carried out their plan.

Cooper hit Small in the back of the head; Small fell to the floor. Defendant grabbed Small's cane. Both Cooper and defendant then ran out of the house. They drove to a nearby bridge and threw the cane out of the car window. At defendant's suggestion, they then returned to Small's house "to get

---

[1] In the Court of Appeals, the defendant also challenged his conviction based upon the trial court's failure to suppress evidence defendant claimed was illegally seized and a statement allegedly obtained in violation of defendant's *Miranda* rights. We did not allow review on these issues and express no opinion on their merits. *See* ORAP 9.20(2).

the money." Cooper waited in the car while defendant reentered the house. Once inside, defendant adjusted the crime scene to make it look like Small had accidentally fallen. He took Small's wallet. At approximately 1:45 p.m., Small's relatives found Small injured and sitting on the floor. By the time he reached the hospital, Small was unconscious. He died on October 31 as a result of the skull fracture inflicted by the cane.

Although the police did not at first suspect criminal involvement in Small's death, they eventually came to suspect defendant and Cooper. Both men were arrested.

In exchange for his testimony against defendant, Cooper was permitted to plead guilty to manslaughter in the first degree and robbery in the first degree, rather than to felony murder and robbery in the first degree, the offenses with which he originally had been charged. Based in part upon Cooper's testimony, defendant was convicted of felony murder and robbery in the first degree and sentenced to life in prison.

## THE STATUTORY ISSUE

ORS 135.405(4) provides:

> "Similarly situated defendants should be afforded equal plea agreement opportunities."

Defendant argues that the statutory directive is mandatory and, because he and Cooper committed the same crime together, they are "similarly situated" under ORS 135.405(4), notwithstanding any differences in their criminal history or the exact role they played in the planning and commission of this offense. The state argues the contrary of both these propositions. Under the facts of this case, we do not find it necessary to resolve these disputes.

ORS 135.415 provides a nonexclusive list of criteria "the district attorney *may* take into account" (emphasis added) in making plea agreements. One of these criteria is the defendant's cooperation with the authorities:

> "The defendant has given or offered cooperation when the cooperation has resulted in or may result in the successful prosecution of other offenders engaged in equally serious or more serious criminal conduct."

ORS 135.415(5). Cooper was willing to and, in fact, did testify

against defendant. Defendant nowhere alleges, and the record does not reveal, that he was equally willing to cooperate with the authorities and testify against Cooper. Even assuming that the statute is mandatory, in the absence of such willingness, the two defendants were not "similarly situated" under ORS 135.405(4). Thus, the district attorney's failure to offer defendant a plea bargain comparable to that offered to Cooper did not violate the statute.

## CONSTITUTIONAL ISSUE

■ Article I, section 20, of the Oregon Constitution provides:

> "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Defendant argues that the opportunity to plead guilty to a lesser offense is a "privilege" under section 20 which was granted to Cooper but was not made available to him. We will assume that, at least in certain circumstances, the equal opportunity to plea bargain, recognized by statute, is a privilege protected by section 20. Thus, for example, district attorneys may not decide whether to plea bargain based on impermissible criteria, such as race or religion. *See, e.g., Hale v. Port of Portland,* 308 Or 508, 783 P2d 506 (1989). However, defendant does not in this case claim he is being discriminated against because he belongs to such a class of persons.

■■ Section 20 protects individual citizens as much as it does classes of citizens. *State v. Freeland,* 295 Or 367, 370, 667 P2d 509 (1983).[2] Furthermore, even when a decision rests within the discretion of the district attorney, that decision is subject to judicial scrutiny. *State v. Freeland, supra,* 295 Or at 370. On the other hand, the mere presence of discretion does not necessarily present any inherent section 20 problems, *id.*

---

[2] *State v. Freeland,* 295 Or 367, 667 P2d 509 (1983), concerns only the application of section 20 to a district attorney's decision whether to charge a defendant by grand jury indictment, or by information after probable cause is established at a preliminary hearing. However, the section 20 principles expressed in *Freeland* are applicable to other discretionary decisions by district attorneys. *See, e.g., City of Salem v. Bruner,* 299 Or 262, 267, 702 P2d 70 (1985) (decision by peace officer whether to cite a violator under state law or municipal ordinance "must rest on meaningful criteria consistently applied to similar situated defendants").

at 371, so long as the exercise of discretion "adheres to sufficiently consistent standards to represent a coherent, systematic policy." *Id.* at 375. Stated differently, the exercise of discretion meets the constitutional standard if "made by permissible criteria and consistently applied." *Id.* at 377.

The standards expressed in ORS 135.415 are consistent standards representing a coherent, systematic policy. Defendant does not argue otherwise. His quarrel is with the application of such standards.

■ Here, the district attorney complied with the standards expressed in ORS 135.415 and agreed to the bargain based, at least in part, upon Cooper's willingness to testify against defendant. The absence of a record establishing that defendant was willing to testify against Cooper, on the other hand, shows that the decision not to offer a plea bargain to defendant was generally consistent with the legislatively-recognized standard found in ORS 135.415(5). Adherence to that standard meets the *Freeland* requirement that the District Attorney adhere "to sufficiently consistent standards to represent a coherent, systematic policy." Defendant has not established a predicate for the alleged constitutional violation.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.