Argued and submitted May 30, reversed and remanded October 31, 2007

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

JERRY DON WALTON,
*Defendant-Respondent.*

Harney County Circuit Court
0406135CR, 0406147CR, 0407176CR, 0407177CR;
A126100 (Control), A126101, A126102, A126103

170 P3d 1122

Christina M. Hutchins, Assistant Attorney General, argued the cause for appellant. With her on the brief were

Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Stephanie Hortsch, Deputy Public Defender, argued the cause for respondent. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

The state in this case charged defendant with nine counts of contempt of court for acts that, as alleged, were both contempts and probation violations. The trial court granted defendant's motion to dismiss on the grounds that the state cannot seek punitive contempt sanctions for conduct that also constitutes a probation violation and that, even if it can, in this case the prosecutor chose to avail himself of that more onerous option not by reference to consistently applied permissible criteria, but rather in a haphazard, standardless manner, thereby violating Article I, section 20, of the Oregon Constitution. On the state's appeal, we hold that the prosecution may charge a defendant with contempt for an act that also constitutes a violation of a condition of probation. We further hold that the prosecutor's decision in this case to charge defendant with contempt instead of seeking probation sanctions or revocation was not standardless, nor did the prosecutor use impermissible criteria to make that decision. We therefore conclude that the trial court erred in granting defendant's motion to dismiss and, accordingly, we reverse and remand.

Defendant was convicted in 2003 of raping his stepdaughter. The court sentenced him to 60 months of probation with the conditions (among others) that he "[s]ubmit to full disclosure polygraph test as part of treatment" and have "[n]o contact with victim or anyone living in her immediate household." Approximately one year later, the Harney County District Attorney charged defendant with nine counts of contempt of court based on alleged contacts with the victim and her family as well as failure to take a polygraph. The district attorney sought up to six months of confinement, fines, probation, and community service for each count of contempt. Defendant filed a motion to dismiss, arguing that, as long as he was on probation, the state could not punish acts constituting violations of probation by charging contempt of court; rather, the sole option was to impose sanctions under the probation statutes. Defendant also argued that, even if contempt charges are generally available for acts that violate conditions of probation, in the present case, the prosecutor chose to avail himself of that option without applying any permissible

criteria; rather, the choice was haphazard, standardless, and ad hoc, thereby violating Article I, section 20, of the Oregon Constitution.[1]

We begin with the question of whether a probationer can be charged with contempt of court for conduct that also constitutes a violation of a condition of probation. Under Oregon law, "[t]he power of a court to impose a remedial or punitive sanction for contempt of court is an inherent judicial power." ORS 33.025(1). A "contempt of court" includes willful disobedience of a court's judgments. ORS 33.015(2)(b). Although the legislature can impose limitations on the court's contempt power, *State v. Moen*, 86 Or App 87, 91, 738 P2d 228 (1987), unless the legislature has done so (or some constitutional provision has the same effect), the court's inherent contempt power is broad, *State ex rel Dwyer v. Dwyer*, 299 Or 108, 114 n 2, 698 P2d 957 (1985). *See also State v. Bailey*, 133 Or App 310, 314, 891 P2d 8 (1995) (court had authority to find defendant in contempt for unpaid court costs despite lack of explicit statutory authority; proper inquiry is whether some statute limits inherent judicial power). Thus, unless defendant can point to some statutory or constitutional provision limiting the court's contempt power such that it cannot be exercised against a probationer for violation of a condition, the court can do so.

Defendant offers only one source of limitation. He contends that, by "adopting a comprehensive statutory scheme to address a person's failure to abide by the conditions of his probation," the legislature necessarily meant that "scheme" to provide the *only* method to sanction violations. Defendant asks us to presume that the legislature would not provide alternative or cumulative sanctions for the same conduct. No logic supports that presumption, and we are not persuaded. Nothing in the probation statutes states or implies that they limit, in any way, a court's contempt power, nor

---

[1] Although the trial court's letter opinion mentions "constitutional level claims under both the Federal and Oregon Constitutions of proportionality of punishment and standardless selection of * * * cases," and the parties' briefs mention the Equal Protection Clause of the Fourteenth Amendment, the "equal treatment" arguments on appeal frame the issue as one arising under Article I, section 20, of the Oregon Constitution and discuss no other issue. We therefore limit our discussion to that issue.

does anything in the contempt statutes (or any other statute) support such an implication.

■     Indeed, the legislature itself has indicated that the opposite inference is correct. ORS 33.045(5) provides, in part:

> "Any sanction imposed by a court for contempt is in addition to any * * * criminal sanction that may be available as a result of the conduct constituting contempt."

Sanctions for violating conditions of probation are "criminal," despite the fact that the procedure for imposing them is not a criminal prosecution. *State v. Donovan*, 305 Or 332, 335, 751 P2d 1109 (1988). Thus, ORS 33.045(5) provides that, based on identical conduct, a court can impose a contempt sanction "in addition to" a sanction for violating a condition of probation. Neither sanction is exclusive. Further, ORS 137.128 provides, in part:

> "(1)   A judge may sentence an offender to community service either as an alternative to incarceration or fine or probation, or as a condition of probation. * * *
>
> "(2)   Failure to perform a community service sentence may be grounds for revocation of probation or contempt of court."

In sum, no authority supports the trial court's conclusion that a contempt sanction is not available for conduct that is both disobedience of a court's judgment and a violation of a condition of probation.

■     The state also challenges the trial court's conclusion that, even if the state may choose between a contempt sanction and a probation sanction, in the present case, that choice violated Article I, section 20, of the Oregon Constitution:

> "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Article I, section 20, prohibits unlawful discrimination against individuals as individuals, as well as against individuals based on their membership in some class. *State v. Clark*, 291 Or 231, 237, 630 P2d 810, *cert den*, 454 US 1084 (1981). The former type of unlawful discrimination occurs when the state distributes a benefit or burden in a haphazard, random,

standardless, ad hoc fashion—that is, without any "coherent, systematic policy." *State v. Freeland*, 295 Or 367, 375, 667 P2d 509 (1983). If the state does employ a systematic policy, distributing benefits or burdens according to consistently applied criteria, then the second type of unlawful discrimination claim might arise if it is claimed that the criteria are not permissible—that is, if the criteria (for example, race or gender) define a class (African-Americans, women) that for one reason or another cannot permissibly be used to distinguish those who receive the benefit from those who do not. *Clark*, 291 Or at 239-40 ("[W]hen wholly standardless application of a general law to individual cases is avoided by formal or informal criteria, these criteria in turn must pass muster under 'classification' analysis.").

■    The claim in this case is of the former type: defendant contended, and the trial court agreed, that the prosecutor's decision to charge him with contempt instead of probation violations was not guided by any permissible criteria. In making such a claim, defendant has the burden of establishing the lack of criteria. *City of Salem v. Bruner*, 299 Or 262, 271, 702 P2d 70 (1985). Further, the criteria that the prosecution uses need not be formally promulgated or even written policies. *Clark*, 291 Or at 246.

Under these precepts, the trial court erred. The prosecutor testified without contradiction that he was guided in his decision by the level of culpability involved in defendant's violations, his escalating defiance of court orders, and his dangerousness to the victim in the underlying rape.[2] Unlike the prosecutorial decisions that the court in *Freeland* indicated might be improper, the choice here was not driven by tactical reasons, such as minimizing the opportunity for cross-examination, or logistical concerns, such as docket constraints. *Freeland*, 295 Or at 380. A decision to subject a defendant to greater or lesser punishment according to the degree to which his conduct is aggravated or culpable cannot possibly be seen as impermissible.

---

[2] We express no opinion as to whether the prosecution accurately characterized defendant's violations; that determination awaits further proceedings on remand.

■      Defendant's argument that the criteria had not been applied consistently and systematically has more force. Defendant's counsel, testifying as a witness, recounted that in more than 22 years as a prosecutor and criminal defense attorney in eastern Oregon, he had never before seen a probation violation charged as a contempt. Indeed, the prosecutor conceded that the practice was new and that, in the future, circumstances calling for its repetition might not occur:

> "It's not going to be a standard policy of the DA's office to file contempt of court for independent probation violation, and it hasn't been in the past. We haven't filed any since this, but these aggravated circumstances will certainly warrant this type of action."

Nonetheless, we conclude that the novelty of the policy and the possibility that it might not be repeated do not establish defendant's claim. A policy need not have a history of consistent prior application in order to be considered coherent and systematic; rather, the initial application can be regarded as the inauguration of a systematic policy, if there is testimony to support that inference. *See State v. Marsh*, 132 Or App 416, 420-21, 888 P2d 580 (1995) (first application of a prosecutorial charging policy is not *per se* ad hoc or standardless). In this case, the prosecutor's uncontradicted testimony ("[T]hese aggravated circumstances will certainly warrant this type of action.") does so. The fact that a situation calling for the more serious sanction might not arise does not mean that, if it does, the policy will not be applied, particularly where, as here, the prosecution states that it will be.

In sum, we hold that the prosecution can choose to charge a defendant with contempt of court based on acts that also constitute a violation of conditions of probation, and that, in this case, the prosecutor's choice to do so did not violate Article I, section 20, of the Oregon Constitution.

Reversed and remanded.