Argued and submitted December 16, 2010, reversed and remanded June 22, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TIFFANY LEE SAVASTANO,
*Defendant-Appellant.*

Washington County Circuit Court
C081586CR; A141053

260 P3d 529

Ernest G. Lannet, Senior Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Patrick M. Ebbett, Assistant Attorney General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Senior Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Defendant was accused of embezzling hundreds of thousands of dollars from her employer in numerous individual theft transactions over a 16-month period in 2005 and 2006. The district attorney charged her with 10 counts of first-degree aggravated theft, ORS 164.057, and six counts of first-degree theft, ORS 164.055 (2007).[1] Each count represented the thefts that occurred within a named month. The counts charging aggravated theft alleged that, in a particular month, defendant stole money "with a total value of $10,000 and more," while the counts charging theft alleged that, in a particular month, the amount was "$750 and more." The prosecutor explained that he decided to aggregate the thefts as he did in this case in order to provide "a clear organizational outline for the jury." Defendant appeals from a judgment of conviction entered after conditional guilty pleas, arguing that the prosecution did not have a consistent, systematic policy regarding aggregation and, for that reason, the aggregation in this case violated Article I, section 20, of the Oregon Constitution.[2] The state contends that the prosecutor's decision was within his discretion. We agree with defendant, and we therefore reverse and remand.

Under ORS 164.055 (2007), a person commits first-degree theft if the total value of the stolen property "in a single or aggregate transaction is $750 or more." The more serious crime of aggravated first-degree theft occurs if "[t]he value of the property in a single or aggregate transaction is $10,000 or more." ORS 164.057(1)(b). "Aggregated" transactions are governed by ORS 164.115(5):

> "The value of single theft transactions may be added together if the thefts were committed:
>
> "* * * * *

---

[1] ORS 164.055 was amended in 2009, in part, to increase the value of the property from $750 to $1,000. Or Laws 2009, ch 16, § 3. Because defendant's actions took place before the amendment, we apply the older version of the law.

[2] Article I, section 20, provides, "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

"(b) Against the same victim, or two or more persons who are joint owners, within a 180-day period."

In the present case, defendant was charged with a large number of thefts, some as small as $50, against the same victim, occurring over a period of 16 months. Thus, under the relevant statutes, the state had an almost limitless number of options for charging defendant, ranging from three counts of aggravated theft if the state chose to maximize the amounts in each count, to one count for each theft transaction if the state chose to maximize the number of charges. The state chose to aggregate by month. For 10 of the months, the aggregate came to $10,000 or more, and defendant was charged with 10 counts of aggravated first-degree theft. For six of the months, the aggregate came to less than $10,000 but more than $750, and she was charged with six counts of first-degree theft.

Defendant moved to dismiss the indictment, arguing that the state's charging decision was not guided by any consistently applied policy, contrary to Article I, section 20, of the Oregon Constitution. According to defendant's motion, the state admitted that the prosecutor "told defense counsel orally that the decision to file one charge per month in this case was made because the one month time period made a convenient period by which to aggregate the charges." The state did not file a written response to defendant's motion; however, at the hearing on the motion, the prosecutor conceded:

"We don't have a policy for the way that these theft cases are aggregated. What we look at is a number of factors that are as unique as defendants are unique and as particular criminal acts are unique. * * * [I]n this particular case, as a side note, it was a decision based on clarity for a jury. It made a lot of sense. * * * [W]hat made sense in this particular case was to lump everything together by month and have a clear organizational outline for the jury when they're looking at the case."

The court denied defendant's motion. Defendant entered a conditional plea of guilty, reserving her right to appeal the denial of her motion. This is that appeal.

The law governing standardless distribution of privileges and immunities under Article I, section 20, is well settled. That provision bars unlawful governmental discrimination against individuals as individuals, as well as against individuals based on their membership in some class. *State v. Buchholz*, 309 Or 442, 446, 788 P2d 998 (1990); *State v. Clark*, 291 Or 231, 237, 630 P2d 810, *cert den*, 454 US 1084 (1981). The former type of unlawful discrimination occurs when the state distributes a benefit or burden in a standardless, ad hoc fashion, without any "coherent, systematic policy." *State v. Freeland*, 295 Or 367, 375, 667 P2d 509 (1983). The prohibition on ad hoc distribution of burdens or benefits "reaches forbidden inequality in the administration of laws under delegated authority as well as in legislative enactments." *Clark*, 291 Or at 239. It constrains, among other things, prosecutorial discretion, including prosecutorial charging decisions. *State v. McDonnell*, 313 Or 478, 837 P2d 941 (1992) (decision to offer plea bargain); *Buchholz*, 309 Or at 446-47 (same); *State v. Farrar*, 309 Or 132, 786 P2d 161, *cert den*, 498 US 879 (1990) (decision whether to prosecute for aggravated murder or murder); *Freeland*, 295 Or 367 (decision whether to charge by information or indictment); *State v. Reynolds*, 289 Or 533, 539-40, 614 P2d 1158 (1980) (decision whether to charge for murder or felony murder). To prevail on such a claim, the defendant has the burden of establishing the lack of criteria or, if there are criteria, the lack of consistent enforcement. *City of Salem v. Bruner*, 299 Or 262, 271, 702 P2d 70 (1985). The criteria need not be formally promulgated; in fact, they need not even be written policies. *Clark*, 291 Or at 246.

Analysis of a claim that the state, directly or by delegated authority, has run afoul of the individual-based aspect of Article I, section 20, involves two inquiries: First, has a state actor made a decision that confers a privilege or imposes an immunity of constitutional magnitude? Second, if so, has the person claiming a constitutional violation shown that the decision did not result from the application of "sufficiently consistent standards to represent a coherent, systematic policy"? *Freeland*, 295 Or at 375.[3] In the present case, the

---

[3] If there is such a policy, then the criteria that define it must themselves be "permissible," that is, they must not involve forbidden classifications, for example by race or gender.

state's decision has obvious and serious consequences; depending on how the prosecution chooses to aggregate the theft transactions, defendant could have been burdened, or not, with the need to defend against a multitude of minor charges, and could have faced possible penalties of varying seriousness. Compared to the privilege or immunity of, for example, having to face a charge by information as opposed to by indictment (the constitutionally significant privilege in *Freeland*) or the privilege of being cited for violation of a city ordinance, as opposed to a state law (the constitutionally significant privilege in *Bruner*), the privileges or immunities faced by defendant here are clearly of constitutional magnitude.

Further, although defendant did not adduce evidence at trial to prove that the charging decision was unsystematic, the state conceded that it was. Although the prosecutor cited a criterion—clarity for the jury—he did not argue that the criterion was a department-wide or consistent policy, that is, he did not contend that, in making the charging decision, the prosecution applied a "jury clarity" policy. To the contrary, he stated that the criterion was used "in this particular case," and candidly admitted, "We don't have a policy * * *." Too, although an acceptable policy might involve application of several factors, *Buchholz*, 309 Or at 446, those factors must remain constant from case to case; here, the prosecutor stated, "What we look at is a number of factors that are as unique as defendants are unique and as particular criminal acts are unique."

The state's arguments on appeal lack merit. It argues, for example, that "[j]ust because the particular procedure used by the prosecutor may not have been used before does not establish the lack of a coherent systematic policy[,]" citing *State v. Walton*, 215 Or App 628, 634, 170 P3d 1122 (2007), *rev den*, 344 Or 671 (2008). It is true that, in that case, we held, "A policy need not have a history of consistent prior application in order to be considered coherent and systematic; rather, the initial application can be regarded as the inauguration of a systematic policy, *if there is testimony to support that inference*." *Id.* (emphasis added). We then noted that there was, indeed, testimony to support that inference. *Id.* Here, there is not.

The state also refers repeatedly to the "jury convenience" policy as "capable of consistent application." The problems with that argument are twofold. First, as the prosecutor acknowledged, there is no policy. Second, even if there were a policy that was *capable* of consistent application, that would not suffice; actual consistent application would be necessary.

In sum, we conclude that the court should have granted defendant's motion to dismiss. Defendant moved in the alternative to compel the prosecution to aggregate the various theft transactions into six-month counts. We do not require that outcome. We require only consistent, systematic criteria, and that those criteria be permissible.[4]

Reversed and remanded.

---

[4] We emphasize that we do *not* decide that ORS 164.115(5) is facially unconstitutional; we hold only that it was unconstitutionally applied in this case. Nor do we reach the question of whether a *policy* based on month-by-month aggregation would necessarily violate Article I, section 20. Finally, we do not reach the question whether a policy based entirely on jury convenience would be "permissible" even if consistently applied.