264 P.3d 176 (2011)
246 Or. App. 1
STATE of Oregon, Plaintiff-Respondent,
v.
Ronald Terrance WASHINGTON, aka Ronald T. Washington, Defendant-Appellant.
080230987; A142887.
Court of Appeals of Oregon.
Submitted August 2, 2011.
Decided October 5, 2011.
*177 Peter Gartlan, Chief Defender, and Elizabeth Corbridge Ranweiler, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.
John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Doug M. Petrina, Senior Assistant Attorney General, filed the brief for respondent.
Before BREWER, Chief Judge, and EDMONDS, Senior Judge.
BREWER, C.J.
Defendant, who was convicted of unlawful possession of cocaine, ORS 475.884, argues that the trial court erred in denying his motion to dismiss the indictment or to reduce the charge from a felony to a misdemeanor. *178 Defendant contends that the policy of the Multnomah County District Attorney that disqualified cases such as his for misdemeanor treatment violates the Equal Privileges and Immunities Clause, Article I, section 20, of the Oregon Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We affirm.
The pertinent facts were adduced at an evidentiary hearing that the court held on defendant's motion, and they all relate to the law and the policies that govern charging decisions in Multnomah County. ORS 475.884(2) defines the crime of unlawful possession of cocaine as a Class C felony. Under ORS 161.570(2), a district attorney may elect to treat a Class C nonperson felony, such as unlawful possession of cocaine, as a Class A misdemeanor. ORS 161.570(6) provides:
"Before a district attorney may make an election under subsection (2) of this section, the district attorney shall adopt written guidelines for determining when and under what circumstances the election may be made. The district attorney shall apply the guidelines uniformly."
Defendant's challenge in the present case is to the policy governing the charging of possession of controlled substance offenses that the Multnomah County District Attorney has adopted pursuant to ORS 161.570(6).
The policy at issue, which was adopted in 2008, provides, in pertinent part:
"Controlled Substance possession cases involving quantities greater than a residue amount shall continue to be prosecuted as felonies. Except as provided in the paragraph[s] below, Controlled Substance possession cases involving a residue quantity shall be issued as the appropriate Controlled Substance possession charge and designated for prosecution as a Class A Misdemeanor. * * * Controlled Substance possession charges eligible for reduction include:
"* * * * *
"ORS 475.884Unlawful Possession of Cocaine
"* * * * *

"Exceptions to misdemeanor prosecution of cases involving residue quantities include situations where the defendant is also charged with another felony, person misdemeanor as defined by sentencing guidelines, a DUII offense arising out of the same incident, defendants listed on Portland Police Bureau's Neighborhood Livability Crime Enforcement Program's master list, or the existence of aggravating circumstances that would make misdemeanor prosecution inappropriate. Aggravating circumstances that may make misdemeanor treatment inappropriate include but [are] not limited to the following: the defendant's prior criminal record, commission of the offense in a drug-free zone, involvement or presence of a minor in the commission of the offense, the use or threat of physical violence during the commission of the offense or during arrest. The Senior Deputy for Unit B must approve ineligibility based upon aggravating circumstances."
(Underscoring in original; emphasis added.)
The Portland Police Bureau's Neighborhood Livability Crime Enforcement Program (NLCEP) that is mentioned in the policy was described in detail at the hearing on defendant's motion. The NLCEP was originally created in 2003 to address the problem of "livability" crimes (more specifically, certain low-level drug offenses and drug-related property offenses) committed by chronic offenders in certain areas of the city. Historically, such offenders would be issued a citation and remain on the streets, where they often would re-offend. The NLCEP created a list of people who most often were arrested for such crimes in those particular areas. Thereafter, when people on the list were arrested for a livability crime in those areas, they would be arrested and booked, not cited and released. The list is updated by the police every three months: People with the highest number of livability crime arrests in the specified areas are added to the list, and people who have not been arrested for new livability crimes in those areas for three years are purged from the list.
In cooperation with the NLCEP program, the Multnomah County District Attorney *179 modified several of his policies to assist the program in reaching its goals of decreasing livability crimes in the designated areas. In particular, when defendant was arrested in this casefor possession of a residue quantity of cocainethe charge was not reduced from a Class C felony to a Class A misdemeanor under the policy, because defendant's name appeared on the NLCEP list. The state also took the position at the hearing on defendant's motion that, if defendant had not been disqualified for misdemeanor treatment based on the NLCEP list, he nonetheless would have been disqualified based on his extensive criminal history, which included more than 30 convictions, most of which involved controlled substances.
In rejecting defendant's challenge, the trial court concluded that basing charging decisions solely on the NLCEP master list was unconstitutional under Article I, section 20, "due to the list being based on arrests, being based on arbitrary geographic criteria, and due to the secret nature of the list." The court concluded, however, that the policy, as written and as described in testimony, was not unconstitutional under either the Oregon or federal constitutions, because the charging decision ultimately remained within the district attorney's discretion.
Defendant raises constitutional challenges to both aspects of the district attorney's policy that applyor potentially applyto him. That is, defendant argues that his exclusion from misdemeanor treatment based on the NLCEP master list violated Article I, section 20, and the Due Process Clause of the Fourteenth Amendment. Defendant also argues that the trial court erroneously concluded that the "discretionary" charging aspect of the policy rendered it constitutional; defendant asserts that basing the charging decision on the existence of a "prior criminal record" is not a "coherent, systematic policy" as required by Article I, section 20. The state responds that the challenged charging decision was constitutional under either aspect of the policywhether based on the NLCEP list or based on defendant's criminal history. As explained below, we agree with the state in both respects.
As a preliminary matter, we frame the issue that is before us. As noted, the trial court's analysis cast doubt on the constitutionality of the NLCEP list itself, but ultimately upheld the constitutionality of the district attorney's policy for making charging decisions. Strictly speaking, the constitutionality of the NLCEP program itself is not at issue here; the only issue concerns the constitutional validity of the district attorney's policy. However, given the interplay between the NLCEP list and the policy, it is necessary to examine the constitutionality of the portion of the NLCEP program that is integrated into the district attorney's policy. Accordingly, as did the trial court, we address both the use of the list and the use of criminal history as criteria for deciding whether a person should be afforded misdemeanor treatment for a Class C felony drug crime.
We first turn to defendant's challenge under Article I, section 20. As we recently explained in State v. Savastano, 243 Or.App. 584, 588, 260 P.3d 529 (2011), Article I, section 20, offers protection from "unlawful governmental discrimination against individuals as individuals, as well as against individuals based on their membership in some class." The present case does not involve a challenge based on class: That is, defendant does not assert that the challenged policy discriminates against 10 persons who, as a class, are entitled to special protection under Article I, section 20. 11 Rather, this case, like Savastano, involves the other type of Article I, section 20, claim. 12 As we explained in Savastano,
"unlawful discrimination occurs when the state distributes a benefit or burden in a standardless, ad hoc fashion, without any `coherent, systematic policy.' State v. Freeland, 295 Or. 367, 375, 667 P.2d 509 (1983). The prohibition on ad hoc distribution of burdens or benefits `reaches forbidden inequality in the administration of laws under delegated authority as well as in legislative enactments.' [State v.] Clark, 291 Or. [231], 239, [630 P.2d 810, cert. den., 454 U.S. 1084, 102 S.Ct. 640, 70 L.Ed.2d 619 (1981)]. It constrains, among other things, prosecutorial discretion, including *180 prosecutorial charging decisions. State v. McDonnell, 313 Or. 478, 837 P.2d 941 (1992) (decision to offer plea bargain); [State v.] Bucholz [Buchholz], 309 Or. [442,] 446-47, [788 P.2d 998 (1990)] (same); State v. Farrar, 309 Or. 132, 786 P.2d 161, cert. den., 498 U.S. 879, 111 S.Ct. 212, 112 L.Ed.2d 171 (1990) (decision whether to prosecute for aggravated murder or murder); Freeland, 295 Or. 367 [667 P.2d 509] (decision whether to charge by information or indictment); State v. Reynolds, 289 Or. 533, 539-40, 614 P.2d 1158 (1980) (decision whether to charge for murder or felony murder). To prevail on such a claim, the defendant has the burden of establishing the lack of criteria or, if there are criteria, the lack of consistent enforcement. City of Salem v. Bruner, 299 Or. 262, 271, 702 P.2d 70 (1985)."
243 Or.App. at 588.
Defendant asserts that placement on the NLCEP list "is quite arbitrary" and that he "is burdened by a state policy that denies equal treatment haphazardly, by ad hoc decisions." Similarly, he contends that the use of "prior criminal history" as a basis for charging decisions is constitutionally infirm because the decision "is left to the individual deputy district attorney" and that, although "the policy includes a requirement for review by a senior district attorney, that review did not occur in this case." We understand defendant to argue, in essence, that the NLCEP list is constitutionally infirm due to an absence of meaningful criteria for inclusion on the list and that the use of criminal history in charging decisions in these circumstances is unconstitutionally infirm due to lack of uniform criteria and lack of consistent enforcement. As explained below, we disagree.
We first address defendant's argument that placement on the NLCEP list is "quite arbitrary." Charging decisions may not be made on ad hoc bases that do not "uniformly rest on meaningful criteria." Freeland, 295 Or. at 377, 667 P.2d 509. Defendant does not explain in detail what he means when he says that placement on the list is quite arbitrary, other than to assert that the NLCEP list "included only crimes deemed to impact livability and not more serious crimes," and is "limited to certain neighborhoods." Although we agree that those, indeed, are the criteria for inclusion on the NLCEP list, we disagree that they are "arbitrary" for purposes of Article I, section 20. A great deal of testimony was presented at the hearing concerning how and why the NLCEP list was developed. To summarize briefly: The program was created because, in certain areas of the city, people who committed certain types of fairly low-level drug and property ("livability") offenses that had a negative effect on the neighborhood were being constantly arrested, cited, and then released, only to repeatedly return to the same neighborhood and commit the same types of crimes. Viewed in that light, the absence of serious felonies from the list makes sense: People arrested for more serious offenses are not routinely cited and released in the same manner as those who commit the types of offenses at which the NLCEP program is directed. See generally ORS 133.055 (issuance of citations). As for the geographical limitations of the program, the record indicates that the areas of the city most negatively affected by livability crime problems were the areas chosen; defendant does not dispute this, but apparently takes the position that including anything less than the entire jurisdiction in the program results in unconstitutionally unequal treatment. We disagree. Nothing in the case law indicates that a geographical criterion is per se impermissible, and defendant has not shown that the criterion has been improperly applied.
We turn to the trial court's other concerns about the constitutionality of the NLCEP list. As noted, the court concluded that making a charging decision based on a person's inclusion in the NLCEP list alone would violate Article I, section 20. The court explained that this was "due to the list being based on arrests, * * * and due to the secret nature of the list." With respect to the list's focus on "arrests," we understand the court's reasoning to be that arrests are not convictions, and basing charging decision on arrests rather than convictions is impermissible because not all arrests lead to convictions. We agree that arrests are not "criminal history," *181 that is, they are not convictions or juvenile adjudications. That does not mean, however, that arrest data must be disregarded in all contexts involving criminal law. The NLCEP program was designed to break the repetitive cycle of arrest, citation, and release. Given the nature of the problem being addressed, using "arrests" as a criterion for the list was not arbitrary. As for the trial court's distaste for "secret" lists used by police, we share the unease conjured by the specter of authorities developing secret lists of people to be rounded up. In this case, however, the policies at issuethe NLCEP program and the district attorney's charging policiesare not secret, nor are the criteria that are used in creating the NLCEP list. Even though the list itself is not made public, it is based on permissible criteria, and, once again, defendant has not shown that the criteria set out in the list have been improperly applied. Given those circumstances, the fact that the list is not made public does not render its use in charging decisions unconstitutional.
We briefly turn to defendant's argument that the trial court erred in upholding the policy based on the criminal history criterion that would have resulted in the charging decision here being the same, regardless of defendant's inclusion in the NLCEP list. Defendant notes that the policy does not define "criminal history," and he further observes that the deputy district attorney in charge of the drug unit acknowledged in his testimony that different prosecutors might have different views as to what would constitute a significant "criminal history" for purposes of the policy.
Here, the deputy district attorney who testified that different prosecutors might view criminal history differently also described what, in his view, was a disqualifying criminal history, and further testified that application of this aspect of the policy required his "specific authorization."[1] To the extent that defendant is suggesting that the district attorney's office failed to follow its own policy because review by the senior deputy "did not occur in this case," we find that argument to be disingenuous. As noted, defendant was not eligible for misdemeanor treatment because he was on the NLCEP list; the reason the "criminal history" exception is in play is because the district attorney's office took the position that, had defendant not been disqualified for misdemeanor treatment based on the NLCEP list, he would have been disqualified based on his criminal history. Defendant has not rebutted the state's evidence on that point, nor has he shown that, in practice, the district attorney's office fails to follow its policy or administers it in a standardless or ad hoc manner. See Bruner, 299 Or. at 271, 702 P.2d 70 (defendant must establish the lack of criteria or, if there are criteria, the lack of consistent enforcement).
Finally, we turn to defendant's argument that failing to afford him misdemeanor treatment violated the Due Process Clause of the Fourteenth Amendment. A number of his arguments here track those set out above in our discussion of his Article I, section 20, challenge, and we reject them for the reasons explained above. Defendant also asserts, however, that the NLCEP list and, more specifically, its use in charging decisions, does not comport with the applicable test for procedural due process, which requires a balancing of,
"[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."
Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
As an initial matter, defendant asserts that the private interest to be affected is a significant one. We agree. The charging decision has the potential to lead to a felony conviction rather than a misdemeanor conviction, which can be significant both in terms of *182 penalty and collateral consequences relating to criminal history. Defendant's primary focus is on "the risk of an erroneous deprivation." He asserts that, because the policy contains no specific mechanism for a person to challenge his or her inclusion on the NLCEP list or be removed from it other than through the passage of time, the risk of erroneous deprivation is great. On that point, we disagree with defendant. Again, we emphasize that we are addressing the district attorney's charging policies; the NLCEP list itself is at issue only insofar as it provides a basis for making charging decisions. The NLCEP list is based on objective criteriaarrest dataand defendant has made no showing that the manner in which that data is gathered has led to anyone being erroneously included on the list. Of course such errors are possible, but the very nature of the policythat is, its use to make charging decisions in cases being brought before a trial courtaffords the best possible protection against erroneous deprivation: A defendant who is denied misdemeanor treatment based on erroneous inclusion on the NLCEP list may raise that issue before the trial court and have it resolved long before the potential adverse effectimposition of a felony, rather than a misdemeanor convictioncan take place.
In sum, we conclude that the Multnomah County District Attorney's policy governing the charging of unlawful possession of controlled substance offenses does not, in the ways that defendant asserts, violate Article I, section 20, or the Due Process Clause of the Fourteenth Amendment.
Affirmed.
NOTES
[1] As noted above, the policy itself specifies that "[t]he Senior Deputy for Unit B must approve ineligibility based upon aggravating circumstances" such as criminal history.